IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2007 MAY 17  PM 4: 47

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
          DEPUTY

| | | |
|---|---|---|
| REALSOURCE, INC. (D/B/A REALSOURCE COMMUNICATIONS, INC.), | § § § | |
| PLAINTIFF, | § § | |
| V. | § § | CAUSE NO. A-04-CA-771-LY |
| BEST BUY CO., INC., BEST BUY ENTERPRISE SERVICES, INC., BEST BUY STORES, L.P., CIRCUIT CITY STORES, INC., COSTCO WHOLESALE CORP., LOWE'S COMPANIES, INC., POTTERY BARN, INC., SEATTLE'S BEST COFFEE, LLC, STARBUCKS CORP., AND WILLIAMS-SONOMA, INC., | § § § § § § § § § § § | |
| DEFENDANTS | § | |

## MEMORANDUM OPINION AND ORDER ON MOTIONS
## FOR SUMMARY JUDGMENT

Before the Court in the above styled and numbered cause of action are seven motions for

summary judgment of noninfringement and three cross-motions for partial summary judgment of

infringement.[1]   The Court now renders this memorandum opinion and order with regard to

---

[1] The following motions for summary judgment of noninfringement were filed January 5, 2007:
Starbucks Corp. and Seattle's Best Coffee (Doc. #348), Williams-Sonoma, Inc. and Pottery Barn,
Inc. (Doc. #346), and Circuit City Stores, Inc. (Doc. #347). The following motions for summary
judgment of noninfringement were filed January 3, 2007: Costco Wholesale Corp. (Doc. #349) and
Best Buy Co., Inc. (Doc. #335). The following motions for summary judgment of noninfringement
were filed December 28, 2006, by Lowe's Companies, Inc.:  Motion for Summary Judgment of
Noninfringement for Failure to Satisfy Claim Limitations (Doc. #328) and Motion for Summary
Judgment of NonInfringement Based on Plaintiff's Divided Infringement Allegations (Doc. #329).
The following motions were filed January 26, 2007 by Plaintiff RealSource: three oppositions to the
defendant's motions for summary judgment of noninfringement and cross-motions for partial
summary judgment of infringement (Docs. #361, 362, 366); three oppositions to the defendant's
motions for summary judgment of noninfringement (Docs. #360 363, 364); and plaintiff
RealSource's Opposition to Defendant Lowe's Companies, Inc.'s Motion for Summary Judgment

Defendants' requests for summary judgment of noninfringement, Plaintiff's cross-motions for partial summary judgment of infringement, and Plaintiff's request for modification of the claims-construction order.

## I.      Introduction and Procedural History

Plaintiff RealSource, Inc. ("RealSource") accuses Defendants Best Buy Co., Inc., Best Buy Enterprise Services, Inc., and Best Buy Stores, L.P. (collectively "Best Buy"); Starbucks Corp., Seattle's Best Coffee, LLC, Williams-Sonoma, Inc., Circuit City Stores, Inc., and Pottery Barn, Inc. (collectively "SWCP"); Lowe's Companies, Inc. ("Lowe's"); and Costco Wholesale Corp. ("Costco") of infringing claims contained in United States Patent No. 5,732,136 ("the '136 Patent").

### A.      Claim Construction

On February 16, 2006, the Court held a claims-construction hearing in this matter. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The Court considered the '136 Patent and prosecution history, the parties' *Markman* briefs, the applicable law regarding, *inter alia*, claim construction, indefiniteness, and means-plus-function claims, and the argument of counsel. On May 25, 2006, this Court rendered a claims-construction order (Doc. #292), which construed the terms as following:

| Claim Term | Construed Meaning |
|---|---|
| "Debit Card" | "a prepaid card for exchange of value" |

---

of Noninfringement Based on Plaintiff's Divided Infringement Allegations (Doc. #265).   The following replies were filed April 6, 2007:  Lowe's Companies, Inc. (Doc. #385, 386), Costco Wholesale Corp. (Docs. #390, 409), Starbucks Corp. and Seattle's Best Coffee (Doc. #392), Circuit City Stores, Inc. (Doc. #393),  Williams-Sonoma, Inc. and Pottery Barn, Inc. (Doc. #394), and Best Buy Co., Inc. (Doc.  #400).

| "ID[2] information [stored on the debit card]" | "encrypted data, excluding the card number, stored on the debit card in the form of merchant ID, store ID, or terminal ID" |
| --- | --- |
| "Terminal" | "a point-of-sale apparatus, which includes a central processing unit, a card reader, a keypad, and a communications interface" |
| "ID information [stored on the terminal]" | "data stored on the terminal in the form of merchant ID, store ID, or terminal ID" |
| "Stored thereon prior to the transaction" | "stored on the terminal prior to the consumer presenting the debit card to the merchant" |
| "Relates . . . in a predetermined manner" | "prior to a transaction, ID information stored on the debit card and ID information stored on a terminal are capable of being matched" |
| "Matching" and "Matched" | "determining whether ID information stored on the debit card and corresponding ID information stored on the terminal  are equal or identical" |
| "Retrieving via the terminal" | " locating and returning, by means of the terminal, ID information and a card number stored on the debit card" |
| "Computer" and "Computer means" | "a data processing device" |

---

2  "ID," as used throughout this opinion, in whatever context, is shorthand for "identification."

| "Transmitting to a computer" | "sending by means of a signal path to a computer" |
|---|---|
| "Validation" and "Valid" | "indication of whether the ID information stored on the debit card matches the corresponding ID information stored on the terminal" |
| "Computer means disposed remotely" | "a computer that is located apart from a terminal and connected to the terminal by a signal path" |
| "Card reader means" | "a device, included as part of a terminal, used for retrieving ID information from a debit card" |
| "Communication means" *function* | "transmitting the ID information stored on the debit card and the ID information stored on the terminal to the computer means" |
| "Communication means" *structure* | "a modem or a signal path" |
| "Selected from a group of ID information" (Claim 2) | "chosen from one of the following ID information" |

B.      *The '136 Patent*

The '136 Patent discloses a "merchant specific debit card verification" system, which may be used to ensure that debit cards purchased at one merchant are not used at another merchant.[3] RealSource contends that Defendants infringe Claims 1, 2, 5, and 6 of the '136 Patent. Claims 1 and

---

[3] '136 Patent, col.1 l.9 ("controlling the locations where the debit cards may be used").

2 are directed to a method using the invention, whereas Claims 5 and 6 are directed to an apparatus embodying the invention.

Claim 1 describes "a method of making a transaction" involving "a debit card having at least one ID information stored theron."[4]   The claimed method requires that the "ID information" "relate[ ] . . . in a predetermined manner."[5]   The "ID information" is retrieved "via the terminal" from the debit card and then transmitted to a computer for the "matching" step.[6]   Then "a validation" is "transmitted via the computer."[7]   Claim 2 of the '136 Patent depends from Claim 1 and requires that "the ID information is selected from a group of ID information consisting of merchant ID, terminal ID and store ID."[8]

Claim 5 is similar to Claim 1, but describes an "apparatus of making a transaction."[9]   The claimed apparatus comprises "a debit card having at least one ID information stored thereon" and "a terminal having at least one ID information stored thereon."[10]   Claim 5 requires that these two "ID information" "relate[] . . . in a predetermined manner."[11]   The "ID information" is retrieved using "card reader means communicating with the terminal" from the debit card and then transmitted to a computer "disposed remotely from the terminal" for the "matching" step to

---

[4] '136 Patent, col.6 ll.50-53.

[5] '136 Patent, col.6 ll.54-58.

[6] '136 Patent, col.6 ll.59-65.

[7] '136 Patent, col.6 ll.66-67.

[8] '136 Patent, col.7 ll.1-3.

[9] '136 Patent, col.7 ll.29-30.

[10] '136 Patent, col.7 ll.31-35.

[11] '136 Patent, col.7 ll.33-37.

determine "whether the transaction is valid."[12]  Claim 6 of the '136 Patent depends from Claim 5 and requires that "the ID information is selected from a group of ID information consisting of merchant ID, terminal ID and store ID."[13]

C.     *The Defendants' Allegedly Infringing Systems*

1.     Costco

The parties agree generally on the structure of Costco's card and on certain details as to how it is used and processed.  Each card has a nineteen-digit card number (also called an "account number") stored on a magnetic stripe.  When a customer requests to purchase or redeem a card, the clerk will enter information relating to the transaction into a point-of-sale ("POS") terminal and then swipe the card.  The POS terminal sends a message to an in-store processor, which forms the actual message packet.  The message packet is then routed to SVS, a third-party card processor that has contracted with several of the Defendants, from the in-store processor.  The messages that SVS receives and sends are divided into "fields."  Field 2 contains the card number, which lies within a specific range of numbers (a "BIN range") that SVS has assigned to Costco.  SVS uses data from a table to associate merchant ID values with the card number's BIN range before matching those associated values with the merchant ID.  SVS then returns a code specifying whether the card should be denied or allowed.

2.     Lowe's

The parties agree generally on the structure of Lowe's card and on certain details as to how it is used and processed.  Each card has a nineteen-digit card number (also called a "primary account

---

[12]  '136 Patent, col.7 ll.38-41; col.8 ll.1-8.

[13]  '136 Patent, col.8 ll.9-12.

number") stored on both a magnetic stripe and embossed on the face of the card. When a customer requests to purchase or redeem a card, a sales clerk will swipe the gift card at a POS terminal. The POS terminal sends a message to an in-store processor that, after adding identifiers for the originating POS terminal and its store, forwards the message to Lowe's corporate host computer in North Carolina. The host computer adds the merchant ID to the message. The message packet is then routed to SVS. The messages that SVS receives and sends are divided into "fields." Field 2 contains the card number, which lies within a BIN range that SVS has assigned to Lowe's. SVS uses data from a table to associate merchant ID values with the card number's BIN range before matching those associated values with the merchant ID. SVS then returns a code specifying whether the card should be denied or allowed.

    3.  Best Buy

    The parties agree generally on the structure of Best Buy's card and on certain details as to how it is used and processed. Each card has a card number (also called a "primary account number") stored on both a magnetic stripe and a bar code. When a customer requests to purchase or redeem a card, the clerk will swipe, scan, or key the gift card at a POS terminal. Once the clerk has entered the information necessary to the transaction, a message is sent to an in-store processor that, after adding other information, forwards the message to Best Buy's headquarters or central data center. The central data center reformats the message and then adds a merchant ID and other information. This final message is then routed to American Express, a third-party hired by Best Buy. Using a series of tables, American Express's Stored Value Card Authorization Platform (SVCap) identifies an "include list" of merchant IDs authorized to accept the particular card. SVCap compares the merchant ID in the message packet to the merchant IDs allowed in the "include

list" associated with the particular card.  SVCap then returns a code specifying whether the card should be denied or allowed.

        4.     SWCP

The parties agree generally on the structure of the SWCP defendants' card and on certain details as to how it is used and processed.  Each card has a "card number" (also sometimes called an "account number") printed on it.  The card has a magnetic stripe which includes the card number. When a customer requests to purchase or redeem a card, the cashier (or barista) will enter the transaction amount into a POS terminal.  The card reader will read all the data from the magnetic stripe.  Once the cashier has entered all the information necessary to the transaction, a message is sent to the in-store processor, which forms the actual message packet.  The message packet is then routed to ValueLink, a third-party gift-card processor hired by SWCP.  The exact manner of the routing to ValueLink differs among the SWCP defendants, but in essence they all route through a central interface server. The servers receive a response code from ValueLink. Although RealSource *alleges* that a "match" occurs, without evidence of the methods used by ValueLink to determine the appropriate response code, RealSource cannot with certainty determine whether a "match" occurs *as claimed in the '136 Patent.*  RealSource and SWCP agreed, as a result of this Court's May 26, 2006 Claims Construction Order, that summary judgment of noninfringement is appropriate. RealSource agreed to cease its discovery efforts against ValueLink in return for SWCP's agreement to not seek summary judgment based on ValueLink's processing of SWCP's gift-card transactions. SWCP and RealSource disagree over whether SWCP's motions for summary judgment exclude the ValueLink processing.  The Court construes SWCP's pleadings to exclude this issue and will not consider ValueLink's activities in determining the pending motions.

D.    *Issues Before the Court*

All of the defendants have filed motions for summary judgment of noninfringement for failure to satisfy claim limitations. Additionally, Lowe's has filed a motion for summary judgment of noninfringement based on RealSource's divided-infringement allegations. RealSource has filed a cross-motion for summary judgment of infringement, contingent upon the Court revisiting and revising its claims-construction order.

## II.    Applicable Law

A.    *Summary-Judgment Standards*

With regard to procedural issues not unique to patent law, the law of the regional circuit controls. *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1358 (Fed. Cir. 2005). This includes summary-judgment motions filed pursuant to Federal Rule of Civil Procedure 56(c). *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 707 (Fed. Cir. 2005). Because summary judgment is not unique to patent law, Fifth Circuit law controls the procedural issues at this stage of the case.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of

the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)); *see also Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*

In order to determine whether summary judgment should be granted, an examination of substantive law is essential. Substantive law will identify material facts in order that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.      Doctrine Of Equivalents

Once a patent's claims are construed, the fact finder compares the construed claims to the accused device or process. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). To prove infringement, RealSource must demonstrate that the defendants meet each claim limitation

10

under the doctrine of equivalents. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). An element in an accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Id.* (*citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). Insubstantiality may be determined by examining whether the accused device performs "substantially the same function in substantially the same way to obtain substantially the same result" as the claim limitation. *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998). The standard for a means-plus-function requires a claim that the accused device performs an "identical function." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). Additionally, "if an accused infringer has simply separated into two components what the patentee has claimed as one component, a fact finder might indeed find such a change 'insubstantial.'" *Toro Co. v. White Consolidated Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001). The "all-elements rule" requires that "equivalence be assessed on a limitation-by-limitation basis" and that no equivalence exists as a matter of law when it "would entirely vitiate the limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). Because infringement under the doctrine of equivalents "often presents difficult factual determinations," a summary conclusion that a reasonable jury could not find infringement is often elusive. *Legett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir. 2002).

    C.    *Divided Infringement*

Divided infringement is where a single act of patent direct infringement occurs through the combined action of two separate parties. To establish direct infringement, every limitation set forth in a patent claim must be found in the defendant's accused product or process exactly or by a substantial equivalent. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

The same rule applies equally to method claims: infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim. *General Foods Corp. v. Studiengesellschaft Kohle GmbH*, 972 F.2d 1272, 1274-75 (Fed. Cir. 1992). Still, "[w]hen infringement results from the participation and combined action of several parties, they are all joint infringers and jointly liable for patent infringement." *Shields v. Haliburton Co.*, 493 F. Supp. 1376, 1389 (W.D. La. 1980). "Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method." *Id.*

 1.  Apparatus Claim

The United States Code contains the requirements for a claim of direct infringement of a patent:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a) ("Section 271(a)"). Courts interpret "use" broadly, in terms of the infringing act of "use." *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1316 (Fed. Cir. 2005). In *NTP* the Federal Circuit also held that "the use of a claimed system under [S]ection 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." *Id.* at 1317. Based on where the "beneficial use" was obtained, the Federal Circuit found that a defendant could be a direct infringer when one part of the accused system was located in Canada, in spite of Section 271(a)'s requirement that the use to be "within the United States." *Id.*

Although *NTP* addressed the issue of when a system is used "in the United States" under Section 271(a), rather than the question of what the law requires for an accused infringer to "use"

12

a system under Section 271(a), one court has interpreted *NTP* as defining both where *and when* a "use" of a claimed system occurs. *See CIVIX-DDI, LLC v. Cellco Partnership*, 387 F. Supp. 2d 869, 884 (N.D. Ill. 2005). In *CIVIX*, the district court found that Expedia could be found to directly infringe the claimed system, under which the end-users ports where part of the system claims, since there was a triable issue of fact as to whether Expedia "uses" the system under Section 271(a). Accordingly, the *CIVIX* court held that an alleged infringer uses a claimed system when the alleged infringer "exercises control over the system and obtains beneficial use of the system." *Id.*

      2.      Method Claim

Neither the Supreme Court nor the Federal Circuit has directly addressed the issue of whether a party who does not perform every step of a patented method or process may be liable for direct infringement where separate entities perform distinct steps of the claimed method or process.[14] Thus, the Court will consider apposite district court authority. Several district courts have found that a party can directly infringe a method or process patent where steps in the patent are performed by

---

[14] In a recent case, without analysis, the Federal Circuit generally approved a jury instruction based on joint infringement of a process patent:

> It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. *Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method.* Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

*On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (emphasis added). However, the Federal Circuit did not address the legal standard for a finding that one entity is liable for direct infringement of a patented method where a third entity performs a step of the claimed method.

distinct entities.[15]  When analyzing the issue of divided infringement, the district courts look for

something less than agency and more than a mere connection to determine whether or not the

accused party directs or controls a third-party supplier.

**III.    Plaintiff's Motion for Reconsideration of Claim Construction**

RealSource requests that the Court use these summary-judgment motions "to correct the

errors RealSource believes were made in its construction."  *See Jack Guttman, Inc., v. Kopykake*

*Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in rolling claim

construction, in which the court revisits and alters its interpretation of the claim terms as its

understanding of the technology evolves.").  RealSource goes on to urge that under *Lava Trading,*

*Inc. v. Sonic Trading Mgt*, this Court is now strongly encouraged to acquaint itself with the accused

product during the claims-construction process.  445 F.3d 1348, 1350 (Fed. Cir. 2006) ("While a

trial court should certainly not prejudge the ultimate infringement analysis by construing claims with

an aim to include or exclude an accused product or process, knowledge of that product or process

provides meaningful context for the first step of the infringement analysis, claim construction.").

RealSource contends that based on the Court's new insight, which will be gained from acquainting

---

[15]  *Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) (collecting cases) (finding that the type of connection between the two parties performing the infringing steps to be a question of fact);  *BMC Res., Inc. v. Paymentech, L.P.*, 2006 WL 1450480, at *6 (N.D. Tex. May 24, 2006) (finding that the Plaintiff must prove that the party accused of infringement "directs or controls the actions of the other entity" performing the remaining steps of the patent and finding that plaintiff failed to provide any evidence of a connection and therefore cannot prove even a mere connection);  *Hill v. Amazon.com, Inc.*, 2006 WL 151911, at *3 (E.D. Tex. Jan. 19, 2006) ("a showing of 'agency' or 'working in concert' is not necessarily required . . . defendant must actually direct the third party");  *Cordis Corp. v. Medtronic AVE, Inc.*, 194 F. Supp. 2d 323, 349 (D. Del. 2002), *rev'd on other grounds* ("some connection" is needed between the two entities);  *Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, 1999 WL 111788, at *5 (N.D. Cal. Feb. 24, 1999) (distinguishing several district courts' rulings on divided infringement of method claims since those cases required "some connection" between the two entities).

itself with the accused product, the Court will alter the claims-construction order. Should the Court decide to change its construction of the term at issue ("ID information"), then the Court would consider RealSource's cross-motion for summary judgement of infringement.

The Court declines RealSource's request and retains its prior claims-construction order, having conducted a tutorial on the technology at issue, reviewed the patent and its prosecution history, the parties' *Markman* briefs, and the applicable law regarding, *inter alia*, claim construction, indefiniteness, and means-plus-function claims, and the argument of counsel. The Court is comfortable with its knowledge of the accused products. Because RealSource's motion for summary judgment of infringement is contingent upon changes to the claims-construction order, the Court will deny RealSource's cross-motions for partial summary judgment of infringement.

## IV. Motions for Summary Judgment of Noninfringement for Failure to Satisfy Claim Limitations

### A. Agreed-Upon Motions

The parties have agreed that summary judgment of noninfringement, both literally and under the doctrine of equivalents, is appropriate since the Defendants' systems lack "ID information [stored on the debit card]." Since all RealSource's allegations of infringement involve "ID information [stored on the debit card]," summary judgment on this issue is dispositive of the entire case. Nonetheless, all Defendants have pursued further findings of summary judgment of noninfringement based on other issues.

The parties have also agreed that summary judgment of literal noninfringement is appropriate because Defendants' systems do not have a "terminal" as construed by this Court. Additionally, RealSource and defendants Costco, Lowe's, and Best Buy agree that summary judgment of noninfringement both literally and under the doctrine of equivalents is appropriate, because these

Defendants' systems use data tables to "match" the transmitted information to stored information, and this Court found RealSource estopped from asserting that the matching process is an infringing equivalent.

Since the parties agree that summary judgment is appropriate, the Court will grant the agreed upon motions for summary judgment.

B.     *Doctrine-Of-Equivalents Summary-Judgment Motions Based On "terminal"*

The Court has construed the term "terminal" as "a point-of-sale apparatus, which includes a central processing unit, a card reader, a keypad, and a communications interface." The Court specifically rejected the assertion that "terminal" could literally include components "positioned at locations other than the point of sale." Although the claim construction does limit the literal meaning of "terminal," it is a question of fact as to whether Defendants used "substantially the same function in substantially the same way to obtain the same result." *See Graver Tank & Mfg. Co.*, 339 U.S. 605, 608 (1950). The "terminal" limitation would not be vitiated by a finding of equivalence for components "positioned at locations other than the point of sale." *See Freedman Seating Co.*, 420 F.3d at 1358. Therefore, Defendants failed to carry their burden of proof to show that no issue of material fact remains as to whether their implementation is substantially the same to the claimed "terminal," when viewed in a light most favorable to the nonmovant. It is inappropriate for this Court to exclude such issue under the doctrine of equivalents. The Court will deny the defendants' motions for summary judgment of noninfringement under the doctrine of equivalents based on the "terminal" claim term.

C.     *Costco's and Lowe's Motions Based On "valid"*

The Court has construed "valid" and "validation" as "an indication of whether the ID information stored on the debit card matches the corresponding ID information stored on the

terminal." Costco's and Lowe's reasons justifying summary judgment of noninfringement based on the claim term "valid" are that there is no "ID information" on the cards, "match" cannot occur, and a "terminal" is not used. Thus, the analysis and resolution of this issue is no different from the combined resolution of the other motions. Because the summary judgment of noninfringement based on "ID information" is entirely dispositive of the issue of whether the "validation" occurs, the Court will grant the requests for summary judgment of noninfringement based on "valid."

       D.     *SWCP's Motion Based On "match" and "relates . . . in a predetermined manner"*

The Court has construed "match" as "determining whether ID information stored on the debit card and corresponding ID information stored on the terminal are equal or identical." The Court has construed "relates . . . in a predetermined manner" as "prior to a transaction, ID information stored on the debit card and ID information stored on a terminal are capable of being matched." SWCP's reasons justifying summary judgment of noninfringement are that there is no "ID information" on the card that can either match or relate to "ID information" on the terminal. Thus, the analysis and resolution of this issue is no different from the combined resolution of the other motions. Because the summary judgment of noninfringement based on "ID information" is entirely dispositive of the issue of whether the "match" occurs, the Court will grant the requests for summary judgment of noninfringement based on the claim term "match."

       E.     *Lowe's Motion Based On "card reader means," "retrieving via the terminal," and "relates . . . in a predetermined manner"*

The Court has construed "card reader means" as "a device, included as part of a terminal, used for retrieving ID information from a debit card." The Court has construed "retrieving via terminal" as "locating and returning, by means of the terminal, ID information and a card number stored on the debit card." The Court has construed "relates . . . in a predetermined manner" as "prior

to a transaction, ID information stored on the debit card and ID information stored on a terminal are capable of being matched." Lowe's reasons justifying summary judgment of noninfringement based on the claim terms "card reader means," "retrieving via the terminal," and "relates . . . in a predetermined manner" are that there is no "ID information" on the Lowe's cards and a "terminal" is not used. Thus, the analysis and resolution of this issue is no different from the combined resolution of the other motions. Since the summary judgment of noninfringement based on "ID information" is entirely dispositive of the issue of whether the "retrieving via the terminal" occurs, "card reader means" are used, or the information "relates . . . in a predetermined manner," the Court will grant Lowe's motions for summary judgment of noninfringement based on the claim terms "card reader means," "retrieving via the terminal," and "relates . . . in a predetermined manner."

## V.   Lowe's Motion for Summary Judgment of Noninfringement based on Plaintiff's Divided Infringement Claim

### A.   The Apparatus Claim

The question is whether genuine issues of material fact exist as to whether the defendant exercises control over and obtains beneficial use of the claimed system.

Lowe's claims that the SVS/Lowe's contract clearly reflects that SVS has the sole right to control the system and precludes Lowe's control over the system. RealSource claims that the entire program is set up for the benefit of Lowe's and that Lowe's controlled and directed SVS's work on implementation of some of the major details of the relationship. RealSource argues that Lowe's and SVS are so intimately connected that Lowe's is allowed to access and modify particular files on SVS's computer system. Lowe's argues lack of any control, while RealSource argues that Lowe's exercised control and has the beneficial use of the claimed system.

18

The evidence, viewed in the light most favorable to RealSource, creates a triable issue of fact. Therefore the Court will deny Lowe's motion for summary judgment of noninfringement based on the divided infringement of an apparatus patent claim. This ruling does not effect the ultimate resolution of the entire case because the Court has previously held that summary judgment was appropriate the claim term "ID information [stored on the debit card]," which is dispositive.

B.      *The Method Claim*

A plaintiff must prove that the party accused of infringement directs or controls the actions of the other entity performing the remaining steps of the patent. Lowe's claims that SVS and Lowe's have an arms-length contract and that the fact that the Lowe's provides data to a second entity is insufficient to create an issue of fact regarding the existence of control.[16] RealSource claims that the evidence it relies on to support its contention that a sufficient connection exists between Lowe's and SVS to warrant submission of this case to a jury. RealSource states that Lowe's processing software interacts with SVS's computer system and can modify SVS files, that Lowe's elected to have magnetic stripes on the cards provided by SVS, and that Lowe's picked denominations of cards provided by SVS. Lowe's evidence, if believed, could establish that Lowe's directed SVS to permit transactions from certain locations as well as controlled and directed different aspects of the SVS services which are directly related to the patented method. The evidence, viewed in the light most favorable to RealSource, creates a triable issue of fact. The Court

---

[16] Lowe's compares its relationship with SVS to the relationship between Paymentech and financial institutions in *BMC Resources, Inc.*, 2006 WL 1450480 at *6 (N.D. Tex. May 24, 2006), where the court found no evidence existed that Paymentech directed or controlled the financial institutions. Lowe's argues that SVS is not an agent or employee of Lowe's, but a independent contractor/vendor that sells services to Lowe's and others. Lowe's does not address any similarity between SVS's relationship with Lowe's retail stores and the Paymentech relationship with the retail merchants with which it contracted. The *BMC Resources* court found no evidence of control.

will deny Lowe's motion for summary judgment of noninfringement based on the divided infringement of a method patent claim. This ruling does not effect the ultimate resolution of the entire case because the court has previously held that summary judgment was appropriate the claim term "ID information [stored on the debit card]" which is entirely dispositive.

## VI.  Conclusion

The Court declines to reconsider its prior claims-construction order and therefore will deny RealSource's Cross-Motion for Partial Summary Judgment of Infringement. The Court will grant summary judgment of noninfringement both literally and under the doctrine of equivalents because the Defendants' systems lack "ID information [stored on the debit card]." Although all of RealSource's allegations of infringement involve "ID information [stored on the debit card]" and summary judgment on this claim term is thereby dispositive of the entire case, the Court has addressed the other motions filed by Defendants.

**IT IS ORDERED** that RealSource's Cross-Motions For Partial Summary Judgment of Infringement and RealSource's requests for modification of this Court's claims-construction order (Docs. #361, 362, 366), are **DENIED**.

**IT IS FURTHER ORDERED** that the portions of all Defendants' motions for summary judgment claiming noninfringement both literally and under the doctrine of equivalents because the systems lack "ID information [stored on the debit card]" (Docs. #328, 346, 347, 348, 349, 335) are **GRANTED**.

**IT IS FURTHER ORDERED** that the portions of all Defendants' motions for summary judgment claiming literal noninfringement because the Defendants' systems do not have a "terminal" as construed by this Court (Docs. #328, 346, 347, 348, 349, 335) are **GRANTED**.

**IT IS FURTHER ORDERED** that the portions of Defendants Costco, Lowe's and Best Buy's motions for summary judgment claiming noninfringement both literally and under the doctrine of equivalents, because these Defendants' systems use data tables and this Court found RealSource estopped from asserting that the matching process is an infringing equivalent (Docs. #328, 349, 335) are **GRANTED**.

**IT IS FURTHER ORDERED** that the portions of Defendants SWCP's motions for summary judgment claiming noninfringement based on the claim term "match" and "relates . . . in a predetermined manner" because the SWCP systems do not use "ID information" (Docs. #346, 347, 348) are **GRANTED**.

**IT IS FURTHER ORDERED** that the portions of all Defendants' motions for summary judgment claiming noninfringement under the doctrine of equivalents based on the claim term "terminal" (Docs. #328, 346, 347, 348, 349, 335) are **DENIED**.

**IT IS FURTHER ORDERED** that the portions of Costco and Lowe's motions for summary judgment claiming noninfringement based on the claim term "valid" (Docs. #328, 349) are **GRANTED**.

**IT IS FURTHER ORDERED** that the portions of Lowe's motions for summary judgment claiming noninfringement based on the claim terms "card reader means," "retrieving via the terminal," and "relates . . . in a predetermined manner" (Docs. #328) are **GRANTED**.

**IT IS FURTHER ORDERED** that Lowe's Motion For Summary Judgment claiming noninfringement based on the plaintiff's divided infringement claims (Doc. #329) is **DENIED**.

**IT IS FURTHER ORDERED** that in all other respects all Defendants' motions for summary judgment are **DENIED**.

SIGNED this _17th_ day of May, 2007.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE